# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:14-cr-00070 |
| | : | |
| v. | : | |
| | : | (Judge Kane) |
| **ROLANDO CRUZ, JR., et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is Defendant Rolando Cruz Jr.'s motion to suppress evidence obtained during a search of 914 E. Boundary Street in York, Pennsylvania. (Doc. No. 448.) The Court conducted a hearing on the motion on August 31, 2015.[1] For the reasons that follow, the Court will deny Defendant's motion.

## I. BACKGROUND

In this motion, Defendant Rolando Cruz Jr. seeks to exclude evidence obtained from a search of 914 E. Boundary Street, in York, Pennsylvania. (Doc. No. 448.) Defendant seeks exclusion of the evidence alleging first that the affidavit does not establish probable cause that evidence of illegal conduct could be found at the premises to be searched. (Id.) Cruz further alleges that the assertions of confidential informant 2 lack a nexus to criminal conduct and that Agent Endy failed to include information about confidential informant 2 that undermines his credibility.

On March 19, 2014, a grand jury returned an indictment charging three of Defendant's co-defendants with trafficking and conspiracy crimes. (Doc. No. 1.) Thereafter, on March 20,

---

[1] At the hearing, the Court heard evidence regarding the present motion (Doc. No. 448) and Defendant's other motion to suppress evidence, which concerns a search of his cell phone (Doc. No. 466).

2014, Magistrate Judge Carlson issued search warrants for a number of locations and vehicles associated with those co-defendants, and agents executed those warrants the next day. (See Doc. Nos. 426, 431, 439.) On March 21, 2014, authorities arrested Defendant for violations of his state parole while he was hiding on the roof adjacent to his father's apartment. (Doc. No. 516 at 29 ¶¶ 97-98.) On March 24, 2014, Magistrate Judge Carlson issued the search warrant at issue here, authorizing the search of 914 E. Boundary Street – the address Defendant listed as his residence with the state parole authorities as shared with his mother. (Doc. No. 516 at 4; 19 ¶ 59.) Agents executed the search warrant on the same day. (Id.) The search recovered a duffel bag, a cellular telephone, a financial statement from Sovereign Bank, a temporary drivers license, and $179,160 in cash. (Doc. No. 448 at 2.)

Magistrate Judge Carlson issued the search warrant in reliance on a probable cause affidavit attached to the warrant application. (Doc. No. 516.) The warrant application and probable cause affidavit bear the signature of Scott Endy, a Special Agent with the Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives. (Id.) The affidavit, which spans 24 pages, sets forth in detail the basis for probable cause to search the address for evidence of criminal activity. (Id.) Because Defendant has challenged the sufficiency of the affidavit, the Court now turns to the affidavit's content.

### A. Agent Endy's affidavit

Agent Endy begins the affidavit by describing his own experience and credentials. (Doc. No. 516 at 5 ¶¶ 1-4.) Paragraphs 8 and 9 purport to summarize the basis for probable cause to search the address. (See id. at 5-6 ¶¶ 8-9.) According to those paragraphs, Defendant was engaged in drug trafficking with three co-defendants, each of whom had been indicted a few

days before. (Id.) In addition, paragraph 9 describes how searches of other locations – locations to which surveillance and confidential informants had linked Defendant – yielded firearms, packaging materials, drugs, and cash. (Id.) The paragraph also describes how Defendant had already been arrested on a state parole violation, and that a search of a separate apartment he shared with his father recovered a stolen firearm and "hundreds of thousands of dollars in US currency." (Id. at 7 ¶ 9.)

The affidavit next introduces six confidential informants. (Id. at 7-14 ¶¶ 10-42.) Most of the information about the confidential informants establishes the long and violent history of the Bloods and Southside gangs in York, Defendant's alleged position as a senior drug trafficker in the Bloods gang supplying the Southside gang, and the confidential informants' bases for knowledge. (See id.) For example, confidential informant 17 admitted to being a Southside gang member "in the Maple and Duke crew or the 'Gates.'" (Id. at 9 ¶ 18.) The informant gave information, consistent with other informants, that Defendant, co-defendant Marc Hernandez, and Douglas Kelly had moved to York from New York City "in the late 1990's or early 2000's." (Id. at 9 ¶ 18); (see also id. at 8 ¶¶ 12-14) (recounting confidential source 9's telling of co-defendants' moving from New York City to York); (see also id. at 11 ¶¶ 27-28) (recounting same information as told by confidential informant 19). "CS17 stated that Rolando CRUZ Jr. is currently a source of crack cocaine and s/he was 'fronted' or given between 100 and 200 grams of crack cocaine between every day to every week." (Id. at 10 ¶ 23.) "CS17 stated that s/he could get kilo quantities of crack cocaine from CRUZ who charges between $19,000 and $22,000 but for amounts less s/he would have to get it from" co-defendants. (Id.) For the most part, the other confidential informants also provided information about the gang and Defendant's

3

position in the gang. (See id. at 7-14 ¶¶ 10-42.) Some of the confidential informant reports date from as early as September 2013, but more recent facts from confidential informants dated from February and March 2014. (Id. at 8 ¶¶ 11-12, 9 ¶ 17, 11 ¶ 27, 13 ¶ 36, 14 ¶¶ 40-42.)

The only confidential informant to directly reference the residence in question was confidential informant 2, who made his or her report to the authorities from prison on the day that the warrant was issued. (Id. at 8 ¶ 11.) That confidential informant claimed to have spoken with Defendant the day he made his or her statement on March 24, 2014, three days after police had arrested Defendant on March 21, 2014. (Id.) According to the confidential informant, Defendant "stated that he thought the police recovered his guns that were in his father's place," "stated that he was going to say his father didn't know he was a fugitive so he could get the charges" against his father dismissed, and "stated that he ha[d] $25,000 and two guns in his mother's residence and wanted someone to recover the money so he could use it for an attorney." (Id.) The affidavit does not explicitly provide any further background about confidential informant 2. (See id.)

After the section devoted to confidential informants, the affidavit lists the chronology of a number of events relevant to the alleged conspiracy. For example, paragraph 44 describes Defendant's 2004 conviction in York County for two counts of delivery of cocaine and two counts of possession with intent to deliver cocaine, in amounts of up to 77 grams. (Id. at 15 ¶ 44.) Paragraph 55 describes the murder of William Terrell, a man identified by confidential informants as owing large sums of money to Defendant and a co-defendant because Terrell had accidentally destroyed a substantial amount of cocaine as he was driving it to Charleston, West Virginia. (Id. at 18 ¶ 55.) On January 6, 2014, agents conducted surveillance at 914 E.

4

Boundary Street and observed Defendant leave the house after a scheduled visit from state parole. (Id. at 19-20 ¶ 59.)

On January 22, 2014, York police responded to reports of a domestic dispute at 2508 Fairway Drive, an address associated with Defendant's alleged girlfriend, Latrice Washington. (Id. at 28 ¶ 93.) "[U]pon arrival, officers met with Sahnobia BERRY the former spouse of [Defendant] who has a child with him. Berry reported that she arrived at [Defendant's girlfriend's] residence to take custody of her child from [Defendant] and they engaged in an argument that resulted in [Defendant] spitting on her." (Id.) Defendant and his girlfriend denied Defendant's ex-wife's account of the events. (Id.) However, when Defendant arrived for a parole meeting on January 24, 2014, he learned that his parole officer intended to treat the domestic dispute incident as a parole violation. (Id. at 28 ¶ 91.) Defendant fled the parole office rather than return to custody, and his alleged girlfriend drove him away. (Id.) This led to a state arrest warrant for Defendant based on parole violations. (Id.) On March 21, 2014, agents interviewed Defendant's father at the father's apartment, and in the course of conducting the interview, officers located Defendant "hiding on a roof top next to the apartment," and arrested him for the parole violations. (Id. at 29 ¶ 97.)

Before Agent Endy applied for the search warrant at issue in this case, police searched Defendant's father's apartment and storage units on the premises. That prior search recovered "marijuana, approximately $3,000 in cash, ammunition, [] multiple firearms," "stolen firearms," and "the 2010 Porsche Panamera . . . known to have been operated by" Defendant. (Id. at 29-30 ¶ 98.) A search of Defendant's alleged girlfriend's residence recovered from "a safe concealed in a wall behind a picture," "a stolen handgun, tends of thousands of dollars in cash," and

5

Defendant's identification. (Id.)

Based on the representations in Agent Endy's affidavit, Magistrate Judge Carlson issued a search warrant for the 914 Boundary St. residence on March 24, 2014, and law enforcement conducted the search on the same day. (Doc. No. 516.) "Per the return on the warrant, law enforcement seized $179,160 in currency; a duffel bag; a cellular telephone; a financial statement from Sovereign Merchant in Mr. Cruz' name; and, a temporary drivers license in Mr. Cruz' name." (Doc. No. 448 at 2.)

The Court convened a hearing on the sufficiency of Agent Endy's affidavit and on the reliability of confidential informant 2's statements.

### B. Testimony from the August 31, 2015 hearing

At the August 31, 2015 hearing on this motion, the Government offered the testimony of Agent Endy. Agent Endy testified that after he made application for the warrant, he learned that some of the information provided by confidential informant 2 was false. Confidential informant 2 was interviewed several times during the course of this investigation, and the March 24, 2014 statement contains the only information confidential informant 2 provided that is now known to be false. Agent Endy testified that he was aware that confidential informant 2 was in custody or incarcerated with Defendant at the time that the informant made his report, but did not include that fact in the affidavit to protect the informant's safety. Agent Endy was also aware that confidential informant 2 was pending a state criminal charge at the time, and was cooperating with detectives, although to Agent Endy's knowledge, confidential informant 2 did not receive payment or special consideration in exchange for his March 24, 2014 statement. Agent Endy testified that because he did not know when the warrant materials related to confidential

6

informant 2 would be unsealed, he chose to give as little identifying information as possible about this informant to protect the informant. Agent Endy testified that he was unaware of any psychiatric conditions confidential informant 2 may have had, but he also testified that he likely reviewed attachments to reports of investigation.

## II. DISCUSSION

### A. Standards governing motions to suppress

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. When a search warrant authorized a search, the proponent of the motion to suppress evidence from the search bears the burden of establishing that his or her Fourth Amendment rights were violated. United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011) (citing Rakas v. Illinois, 439 U.S. 128, 132 n.1 (1978)); see United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The challenger must make a showing by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974). At a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." United States v. Richardson, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).

### B. Probable cause

Defendant argues that Agent Endy's affidavit of probable cause was deficient, so the Court should suppress the evidence obtained during the search. (Doc. No. 448 at 2 ¶ 4.) According to Defendant, confidential informant 2 is not demonstrably reliable based on the four corners of the affidavit. (Doc. No. 449 at 4.) Further, other than confidential informant 2's

statement, Defendant's listing of the address with parole authorities, and surveillance of him at the address, "[t]here is literally not another fact in [Agent] Endy's Affidavit that mentions the E. Boundary address, or that provides any reason to believe that fruits or instrumentalities of a crime were to be found there." (Id. at 3-4.) The Government argues that other known facts, such as the charging of Defendant's father and the police's recovery of guns at his father's residence, corroborate confidential informant 2's statement, and that under a totality of the circumstances, Magistrate Judge Carlson possessed a substantial basis for concluding that probable cause existed to search 914 E. Boundary Street. (Doc. No. 492 at 8-10.)

Search warrants must be supported by probable cause. Probable cause for the issuance of a warrant is found where, under the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (internal citations and quotations omitted). Upon a challenge to a probable cause determination, courts apply a deferential standard of review. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002). This means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 147 (quoting United States v. Jones, 994 F.2d 1051, 1054 (3d Cir. 1993)). The question before the Court is not whether probable cause actually existed, but instead whether Magistrate Judge Carlson possessed "a substantial basis" for finding probable cause. Id. (internal quotations omitted).

In Defendant's case, the Court finds that Magistrate Judge Carlson had a substantial basis for finding probable cause to search the residence. Agent Endy's affidavit details an alleged criminal conspiracy dating back years, with consistent information between confidential informants that has been at least partially corroborated by direct police investigation. (See Doc. No. 517 at 14-30.) The testimony of confidential informant 2 offered Magistrate Judge Carlson explicit cause to believe that the instrumentalities of the alleged conspiracy could be found at Defendant's mother's residence, even though the statement may ultimately have proven to be partially false.

Even absent confidential informant 2's statement, the volume of information alleged to implicate Defendant in the conspiracy and the fruitfulness of previous searches of other locations affiliated with Defendant and his co-defendants, and the strength of Defendant's ties to the location, under the "totality of the circumstances," indicate "a fair probability that contraband or evidence of a crime" would be found at 914 E. Boundary Street. See Gates, 462 U.S. at 238. Accordingly, the Court finds that Magistrate Judge Carlson had a substantial basis for finding probable cause to search Defendant's residence, and will not suppress evidence on that basis.

**C.     The good faith exception**[2]

In addition, were the Court to find probable cause lacking, evidence from the search would be suppressed only if the Court also found that the "good faith exception" to the exclusionary rule did not apply. Defendant does not directly argue that the good faith exception does not apply, but he does argue that certain alleged deficiencies in the affidavit were "reckless,

---

[2] Given the Court's finding regarding probable cause, the Court considers the good faith exception only in the alternative.

and designed to provide an [sic] patina of reliability when none existed." (Doc. No. 449 at 5.)

Where a warrant is defective or lacks probable cause, evidence from the search will not be suppressed when the officers that executed the search warrant acted in "objectively reasonable reliance" on the lawfulness of the warrant. United States v. Leon, 468 U.S. 897, 925 (1984). This exception to the exclusionary rule applies unless a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999). Courts have identified four situations where reliance on a signed search warrant would not be "in good faith:" (1) when the issuing magistrate "was misled by information in an affidavit that the affiant knew was false;" (2) when "the issuing magistrate wholly abandoned [his or her] judicial role;" (3) when the affidavit in support of the warrant is "so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is so "facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably believe it was valid." Leon, 468 U.S. at 922-23). In those circumstances, a reasonable officer should not conduct a search, even where a facially valid search warrant authorizes one, and evidence uncovered in such a search will be suppressed. See id.

In the present case, the Court found above that, due to Agent Endy's affidavit, Magistrate Judge Carlson had a sufficient basis for finding probable cause to search 914 E. Boundary Street. Consequently, reliance on the signed warrant was reasonable. However, even if Magistrate Judge Carlson lacked a sufficient basis, there is no indication that any of the Leon exceptions to the good faith rule could apply to this situation, so the good faith exception would operate to

keep the evidence from being suppressed.

Specifically, Defendant raises objections to the veracity of representations Agent Endy made in his affidavit of probable cause, so Defendant seeks to invoke the first of the Leon exceptions, rooted in Franks v. Delaware, 438 U.S. 154 (1978). See Leon, 468 U.S. at 914, 923. To prevail under Franks, there must have been a false or misleading statement or a misleading omission in an affidavit of probable cause, and the defendant must show "[1] that bad faith or reckless disregard existed on the part of the affiant, and [2] that there would have been no probable cause but for the incorrect statement." United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006). First, the Court credits Agent Endy's testimony at the hearing that, to the extent confidential informant 2 made false statements, Agent Endy did not know that the statements were false at the time. Similarly, to the extent that the affidavit may have been misleading because it did not include the fact of the informant's incarceration, the Court credits Agent Endy's testimony that the omission was made out of a genuine concern for safety.[3] In addition, confidential informant 2 had a history of cooperation with the authorities in this case. Consequently, the Court finds that Agent Endy did not act in "bad faith or reckless disregard" when he included confidential informant 2's statements in his affidavit. Second, as the Court explained above, Magistrate Judge Carlson would have had a substantial basis for finding probable cause even absent confidential informant 2's statement. Accordingly, Defendant has not shown that the evidence from 914 E. Boundary should be suppressed pursuant to Franks.

---

[3] In passing, the Court observes that the affidavit does indicate that Defendant had been arrested (Doc. No. 516 at 29 ¶ 95), and that confidential informant 2's conversation with Defendant occurred after his arrest, so a reader would likely infer or suspect that confidential informant 2 was also incarcerated.

11

In sum, the Court finds that a substantial basis existed for Magistrate Judge Carlson to find probable cause to search Defendant's residence, and that even if no substantial basis existed, officers would still have been entitled to rely in good faith on the signed warrant. As such, the Court will not order evidence of the search suppressed.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress evidence from a search of the residence at 914 E. Boundary Street in York, Pennsylvania. An order consistent with this memorandum follows.