**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROLANDO CRUZ, JR.,** | : | |
| **Petitioner** | : | **No. 1:14-cr-00070-4** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Petitioner Rolando Cruz, Jr. ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") (Doc. No. 1756), as well as his related motion for leave to amend his § 2255 motion to clarify the language of the substantive charge for one of the offenses of which he was found guilty (Doc. No. 1859) and his motion for leave to file a supplemental reply brief (Doc. No. 1894). For the following reasons, the Court will grant Petitioner's motions for leave to amend and leave to file a supplemental reply brief, but will deny Petitioner's § 2255 motion.

**I.    BACKGROUND**

In 2014, a federal grand jury returned a superseding indictment charging Petitioner and twenty (20) codefendants (collectively, "Codefendants," and with Petitioner, "Defendants") with racketeering conspiracy, 18 U.S.C. § 1962 ("RICO") (Count I), conspiracy to distribute a controlled substance, 21 U.S.C. 846 (Count II), and distribution of a controlled substance (Count III), 21 U.S.C. § 841(a). (Doc. No. 78.) Four Defendants were additionally charged with firearm- and drug-related offenses, including, as to Petitioner, possession of a firearm in furtherance of a drug-trafficking crime (Count V) and conspiracy of the same (Count VI). (<u>Id.</u>)

The charges stemmed from Defendants' association with a violent street gang—the Southside gang, an affiliate of the Bloods, a national street gang—to perpetrate drug trafficking

and other violent acts. (Id.) The conspiracy took place over a twelve-year period and involved deadly gang violence. (Id.) Nine (9) defendants entered pleas of guilty. (Doc. Nos. 1380, 1493, 1542, 1550–51, 1560, 1575, 1585.) Twelve (12), including Petitioner, proceeded to a joint jury trial. (Doc. Nos. 974–1027.) The jury found all twelve guilty, in late 2015, of one or more charges. (Doc. Nos. 911–34.) As to Petitioner, the jury found him guilty of RICO (Count I), two drug counts involving 5 kilograms or more of cocaine and 280 grams and more of crack cocaine, heroin, and marijuana (Counts II–III), possession of firearms in furtherance of drug trafficking (Count V) and conspiracy thereto (Count VI). (Doc. No. 917.)

Petitioner's presentence investigation report ("PSR") calculated a combined adjusted offense level of 52—capped at 43 pursuant to U.S.S.G. ch. 5, pt. A, cmt. n.2—and a criminal history category of V, determining that Petitioner's guideline range was life in prison.[1] (PSR ¶¶ 321, 324, 360.) As to statutory sentencing ranges, the PSR concluded that Petitioner faced maximum terms of life imprisonment on all but Count VI, which carried a maximum term of 20 years' imprisonment, and mandatory minimum terms of ten years (on Counts II and III) and five years (on Count V). (PSR ¶ 359.)

Two aspects of the PSR are particularly relevant to Petitioner's § 2255 motion. First, the PSR enumerated "underlying racketeering activity" that resulted in a higher statutory maximum and guideline range for the RICO count, as follows:

> The instant RICO offense encompasses four separate underlying racketeering categories, and 109 racketeering activities (RA) as referenced in The Offense Conduct section of this report. A defendant need not have been charged with the "underlying racketeering activity," and need not have been personally involved in the activity as long as the conduct was reasonably foreseeable to him in furtherance of the RICO enterprise. Southside was known to use threats and

---

[1] This life guideline range related to Petitioner's convictions on Counts I–III and VI. See (PSR ¶ 360). The guideline range regarding Count V was sixty (60) months. See (id.).

> violence, and had access to firearms to protect their territory. Since this activity
> was known to all those involved, all of underlying activity noted by an 'RA' was
> reasonably foreseeable to the participants beginning when they personally joined
> Southside.

(Id. ¶ 209.)  The PSR enumerated the relevant racketeering activities, e.g., first-degree murder, attempted first-degree murder, robbery, narcotics possession/distribution.  (Id. ¶¶ 210–68.)  Second, as to the drug-trafficking conspiracy charge under 21 U.S.C. §§ 841(a)(1),[2] the PSR concluded that because the jury found Petitioner responsible for 280 grams or more of crack cocaine—resulting in a base offense level of 38, the highest base offense level provided in U.S.S.G. § 2D1.1(c)(1)[3]—the "addition of cocaine, heroin[,] and marijuana would result in no increase."  (Id. ¶ 261.)  The PSR therefore did not "factor[] [the cocaine, heroin, and marijuana] into the calculation."  (Id.)

Although Petitioner's attorney ("Trial Counsel") objected to the PSR on numerous grounds, including the PSR's conclusion that Petitioner was responsible for certain relevant conduct, including drug trafficking conduct (Doc. No. 1153); see, e.g., (id. at 10) ("[Petitioner] objects to the PSR's attribution of the Offense Conduct, whose only connection to [Petitioner] is the existence of an enterprise that the jury was not required to find."), the Court adopted the PSR's conclusions (Doc. No. 1318).  In doing so, the Court arrived at a guideline range of life

---

[2]  The conduct underlying the drug-trafficking conspiracy charge increased the base offense level for the RICO count because such conduct was considered racketeering activity and, as such, grouped together as the "drug offenses."  (Doc. No. 1152 ¶¶ 208, 261); see U.S.S.G. § 2E1.1(a) (providing for a base offense level of 19 to RICO counts "unless the offense level applicable to the underlying racketeering activity is greater"); see also Salinas v. United States, 522 U.S. 52, 65 (1997) (noting that racketeering activity can be reasonably foreseeable, and therefore ascribed to a defendant for RICO sentencing purposes, even if he "does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense").

[3]  Section 2D1.1 of the U.S.S.G. relates to "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy."

imprisonment based a total offense level of 43 and a criminal history category of V. (Id.) The Court ultimately sentenced Petitioner to concurrent terms of life imprisonment (on Counts I–III) and 20 years (on Count VI), running consecutively to a 60-month term (on Count V). (Doc. No. 1315 at 3.)

Petitioner and nine Codefendants who proceeded to trial appealed their convictions and sentences to the United States Court of Appeals for the Third Circuit ("Third Circuit"). See United States v. Williams, 974 F.3d 320, 338 (3d Cir. 2020). The Third Circuit grouped their claims on appeal into roughly five categories: (1) Sixth Amendment challenges to this Court's closure of the courtroom to the public during voir dire; (2) challenges to the Court's in camera disposition of a challenge asserted under Batson v. Kentucky, 476 U.S. 79 (1986); (3) evidentiary challenges relating to motions to suppress evidence recovered from their residences under search warrants; (4) challenges to the sufficiency of evidence at trial; and (5) challenges to their sentences based on alleged procedural defects. See id. at 335–36. While affirming all ten Defendants' judgments of conviction, and based on the Government's concession, the Third Circuit partially vacated the judgments of sentence of eight Defendants "as to the assessment of police overtime costs," vacated the judgment of sentence of one of those eight Defendants— Hernandez—in full to permit him an opportunity to make a statement or present mitigation evidence in connection with his sentencing proceedings, and vacated another of the same group of Defendants—Scheug—as to the assessment of restitution, fines, and costs. See id. at 375, 377, 380; see also (Doc. Nos. 1637, 1637-1, 1638, 1638-1, 1639, 1639-1, 1640, 1640-1, 1641, 1641-1, 1642, 1642-1, 1643, 1643-1, 1644, 1644-1, 1645, 1645-1, 1646, 1646-1).

In October 2021, this Court issued orders effectuating the vacatur of five Defendants' judgments of sentence as to the assessment of police overtime costs and entered corresponding

amended judgments.  (Doc. Nos. 1684–85 (Petitioner), 1687–88 (Kelly), 1690–91 (Villega), 1693–94 (Atkinson), 1696–97 (Sistrunk).)  In December 2021, following sentencing hearings, the Court resentenced Defendants Hernandez and Schueg and issued amended orders regarding their judgments of sentence.  (Doc. Nos. 1705, 1709 (Schueg), 1711–12 (Hernandez).)[4]

Petitioner filed his § 2255 motion in October 2022 and subsequently filed a Notice of Election—in response to the Court's Miller notice—indicating that he wished to have the motion ruled on as filed.  (Doc. No. 1801.)  The Government filed a brief in opposition in December 2022 (Doc. No. 1814) and Petitioner belatedly filed a reply brief in February 2023 (Doc. No. 1829).  Several months after Petitioner filed his reply brief, he then filed his also-pending motion for leave to amend his § 2255 motion in July 2023.  (Doc. No. 1859.)  The Government did not file a brief in opposition to the motion for leave to amend.  On August 20, 2024, Petitioner filed a motion for leave to file a supplemental reply brief with a brief in support.  (Doc. Nos. 1894–95.)  The Government did not file a brief in opposition to the motion for leave to file a supplemental reply brief.  Having been fully briefed, Petitioner's § 2255 motion is ripe for disposition, as are his motions for leave to amend and leave to file a supplemental reply brief.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).

---

[4]    An amended judgment was not entered as to Defendant Eatmon, whose judgment of sentence was ordered vacated as to the police overtime costs, because his original judgment did not include such costs.  See (Doc. No. 1504).

However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion.  See 28 U.S.C. § 2244.

## III.    DISCUSSION

Petitioner's § 2255 claims can be divided into three categories.  He argues that:

(1)    Trial Counsel provided ineffective assistance because he failed to properly challenge the PSR's drug weight calculation, which was erroneously based on relevant conduct for which Petitioner should not have been held responsible;

(2)    Trial Counsel was ineffective for failing to object to how the drug weight was determined, resulting in an erroneous mandatory minimum for his conspiracy charge; and

(3)    There was insufficient evidence to support a racketeering enterprise.

(Doc. Nos. 1751, 1829.)[5]

As his claims reflect, Petitioner largely seeks § 2255 relief based on the overarching assertion that his Trial Counsel provided constitutionally deficient representation in violation of the Sixth Amendment.  A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v.

---

[5]   While Petitioner's brief in support of his § 2255 motion is less clear in terms of the arguments he seeks to advance, the Court has construed his motion and briefing liberally and, in any event, has the benefit of his reply brief (Doc. No. 1829), motion for leave to file an amended motion (Doc. No. 1859), and motion for leave to file a supplemental reply brief with a proposed reply brief (Doc. Nos. 1894, 1894-1), which very clearly identify these three claims as the bases of his motion.

<u>Washington</u>, 466 U.S. 668, 687–88, 694 (1984).  <u>See</u> <u>George v. Sively</u>, 254 F.3d 438, 443 (3d Cir. 2001).  The first <u>Strickland</u> prong requires Petitioner to "establish first that counsel's performance was deficient."  <u>See</u> <u>Jermyn v. Horn</u>, 266 F.3d 257, 282 (3d Cir. 2001).  Petitioner must show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  <u>See</u> <u>id.</u>  To do so, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  <u>See</u> <u>id.</u> (citing <u>Strickland</u>, 466 U.S. at 688).  There is a "'strong presumption' that counsel's performance was reasonable."  <u>See</u> <u>id.</u>  Under the second <u>Strickland</u> prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  <u>See</u> <u>id.</u>  Prejudice in this context means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>See</u> <u>id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694).  Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  <u>See</u> <u>id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694).

Notably, Petitioner must make an adequate showing with respect to <u>both</u> prongs of the <u>Strickland</u> test in order to be entitled to relief.  <u>See</u> <u>Strickland</u>, 466 U.S. at 686.  A failure to make the required showing on either prong precludes a finding in Petitioner's favor.  <u>See</u> <u>id.</u> at 700.  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first when it is dispositive of a petitioner's claims.  <u>See</u> <u>United States v. Cross</u>, 308 F.3d 308, 315 (3d Cir. 2002).

Petitioner also asserts, however, claims of error that he either did raise or could have raised on direct appeal.  <u>See</u> <u>infra</u>.  These claims are unrelated to any claim of ineffective assistance of counsel and therefore do not implicate <u>Strickland</u>.  As to the claims Petitioner

raised on direct appeal, but which the Third Circuit rejected, it is settled law that "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion . . . ." See United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014). This rule embodies the "law-of-the-case doctrine, which provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" See United States v. Thomas, 750 F. App'x 120, 124 (3d Cir. 2018) (unpublished) (quoting Farina v. Nokia Inc., 625 F.3d 97, 117 n.21 (3d Cir. 2010)) (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)). Regarding claims that Petitioner could have raised but did not raise on direct appeal, the general rule is that "[a] defendant cannot raise in a § 2255 motion a constitutional issue that he could have raised on direct appeal, but did not, unless" the defendant: (1) "shows good cause for, and actual prejudice from, his failure to raise the claim on appeal"; or (2) "demonstrates that he is 'actually innocent' of a crime charged." See United States v. Hurt, No. 10-cv-05942, 2011 WL 5967186, at *2 (E.D. Pa. Oct. 5, 2011) (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)). With these standards in mind, the Court turns to Petitioner's three claims for relief.

A.    **Ground One: Failure to Properly Object to the Drug Weight Guideline Calculation**

Ground One of Petitioner's § 2255 motion asserts that Trial Counsel failed to raise an appropriate objection to the PSR's drug weight guideline calculation, a calculation that the Court adopted as pertains to the relevant conduct. (Doc. Nos. 1757 at 12; 1829 at 4–5.) Petitioner maintains that his "sentence in determining the drug quantity was based on the conduit [sic] and statements of the [Codefendants] and other witnesses, without the Court conducting and establishing an individualized finding," arguing that Trial Counsel "should have challenged the reliability of whatever method the judge uses to calculate the drug quantity." (Doc. No. 1757 at 12.) Relatedly, Petitioner also appears to assert that the Court did not "make clear the evidence

[that was] us[ed] to make the [drug] quantity estimate." (Id.)

In response, the Government asserts that Trial Counsel "did object and did pursue the exact line of argument [Petitioner] claims he should have pursued." (Doc. No. 1814 at 9.) The Government cites to Trial Counsel's objections to the PSR, i.e., objections to the PSR's inclusion—in "Offense Conduct"—of various acts committed as part of the larger conspiracy and not necessarily by Petitioner himself. (Id.) (citing PSR Addendum ¶¶ 1, 9–11). One such objection was "to all of the Racketeering Activities concerning drug offenses," and specifically to "the assertion [that Petitioner] was responsible for 28.061 kilograms of crack cocaine[.]" (PSR Addendum ¶ 9.) The PSR Addendum, and later the Court, rejected these and the many other objections advanced by Trial Counsel. See, e.g., (id. ¶¶ 1, 9–11).

Petitioner's reply brief clarifies and expands upon his arguments in support of Ground One. (Doc. No. 1829.) The reply brief does not, however, dispute the Government's assertion that Trial Counsel raised the objections Petitioner argues he should have raised, nor does the reply brief address the fact that the record supports the Government's assertion in that regard. The reply brief argues the following:

> The Government failed to prove that [Petitioner] entered into a conspiratorial agreement to conduct or participate in an association-in-fact "enterprise" that operated as a "continuing unit." The testimony at trial overwhelmingly demonstrated that Southside was nothing more than an area of York, Pennsylvania that individuals lived in. While drug dealing and other crimes unquestionably occurred in Southside, there was no conspiratorial agreement between [Petitioner] or anyone else that Southside operate [sic] as a "continuing unit." In fact, the weight of the evidence clearly showed that the crimes committed in Southside were motivated by individual goals and personal vendettas. As such, [Petitioner]'s conviction on Count 1 of the indictment should be reversed. Further, because reversal of [his] conviction on Count 1 unbundles [his] sentencing package, the Court should vacate [his] sentence and remand for re-sentencing.

(Doc. No. 1829 at 5.) Regarding his use of the phrase "unbundles," the context for Petitioner's assertion appears to be the fact that the Court resolved all guideline objections based on the drug

grouping calculation, finding it unnecessary to consider the other guideline groupings (e.g., murder and attempted murder). (Id. at 2) (citing Doc. No. 1319 at 74).

Having considered Petitioner's arguments, the briefing of the parties, and the record of these criminal proceedings, the Court concludes that Petitioner has failed to establish that Trial Counsel's performance was ineffective in this regard because the record clearly demonstrates that Trial Counsel raised the objections that Petitioner argues he did not raise, including objections to the PSR's conclusion that Petitioner was responsible for drug weights based on relevant conduct that was part of jointly undertaken criminal activity. See, e.g., (Doc. No. 1153 at 2, 8, 10, 12, 16) (objecting to "portions of the offense conduct based on the existence of a so-called Southside Gang," to the "attribution of the Offense Conduct" to Petitioner given the PSR's statement that "in many ways the drug trafficking was an individual activity," to the attribution of conduct stemming from the seizure of drugs from a Codefendant's home, and to the "factual assertion that he was responsible for 28.061 kilograms of cocaine"). Because the record conclusively controverts Petitioner's claim that Trial Counsel failed to raise the objections implicated by Ground One of Petitioner's § 2255 motion, Petitioner's claim that Trial Counsel was ineffective for failing to raise such objections is without merit.[6] Accordingly, the Court will deny Petitioner's motion as to Ground One.

---

[6] To the extent Petitioner attempts to rehash the argument he raised during his criminal proceedings and on direct appeal—that the Government failed to establish the existence of an enterprise—the Court will not entertain that rehashed argument for the reasons discussed in connection with Ground Three, infra, which challenges the sufficiency of evidence in support of a racketeering enterprise and does not raise a claim of ineffective assistance of counsel.

**B.**    **Ground Two: Failure to Object to the Drug Weight Attribution and the Statutory Sentencing Range**

Ground Two of Petitioner's § 2255 motion asserts that Trial Counsel was ineffective for failing to raise appropriate objections to the calculation of drug weights and their attribution to Petitioner.  (Doc. No. 1757 at 11–17.)  He argues that Trial Counsel was ineffective for failing to argue that the quantity of drugs attributed to Petitioner should not have been based on the conduct of the conspiracy (id. at 15) and for failing "to request an individualized finding" regarding drug quantities, "result[ing] in an Apprendi v. New Jersey, 530 U.S. 466 (2006) and Alleyne v. United States[,] 570 U.S. 99 (2013) violation" (id. at 17).  It is in connection with this argument that Petitioner seeks leave to amend his § 2255 motion to clarify the precise language of the substantive charge provided to the jury regarding Count 3.[7]  (Doc. No. 1859 at 2.)

The substantive charge for Count 3 instructed: "[i]f you find [Petitioner] guilty of Count 3, please indicate the weight of the mixture or substance containing the drugs [Petitioner conspired to distribute and possess with intent to distribute.  Please check only the highest applicable quantity[.]"  (Doc. Nos. 917 at 8; 1859 at 2; 1859-1 at 9.)  Below that language, the jury indicated "280 grams or more of a mixture or substance containing cocaine base (crack)" and "5 kilograms or more of a mixture or substance containing cocaine."  (Doc. No. 917 at 8.)  Petitioner argues that it was error to instruct the jury to "Please check only the highest applicable quantity."  (Doc. No. 1859 at 3.)   The Court will consider Petitioner's clarification as there is no prejudice to the Government in granting this request and the motion was made in good faith by pro se Petitioner.  (Id. at 2.)

In its brief in opposition to the claim in Ground Two, drawing from the Third Circuit's

---

[7]  Petitioner did not raise any new claims in his motion for leave to amend and only focused on Count 3's jury instructions.  (Doc. No. 1859 at 2.)

opinion resolving Petitioner's direct appeal, the Government asserts the following:

> [Petitioner] argues that his counsel was ineffective for failing to object to how the drug weight was determined for his conspiracy charge for mandatory minimum purposes. The claim fails, ultimately, because [Petitioner] suffered no prejudice. The life sentence he received was well above the 10-year mandatory minimum sentence that applied. As discussed in more detail below, the Third Circuit resolved the issue of prejudice on direct appeal. Although the circuit took issue with the jury instruction as it applied to the mandatory minimum, i.e. found an Alleyne violation, the circuit found no violation of Apprendi. As a result, [Petitioner] and other codefendants suffered no prejudice from the errant instruction. This Court when resolving the issue of prejudice should similarly find that [Petitioner] cannot establish prejudice.

> At the conclusion of the trial, the Court advised the jury of how they were to determine drug weight. With respect to the substantive charge at Count 3 (21 U.S.C. § 841), the jury was allowed to aggregate the drug weight over a period of time. For the conspiracy offenses, they were advised that in making this decision, they "should consider all controlled substances that members of the conspiracy actually possessed with intent to distribute or distributed." The jury was not asked to make an additional, individual determination of drug weight for each defendant. [Petitioner]'s trial counsel did not object to these instructions nor did any other defendant. These instructions were partially in error.

> For Count 3, the Third Circuit found insufficient evidence to support the verdict regarding drug weight. Relying on United States v. Rowe, 919 F.3d 752, 759–60 (2019), the court reiterated that multiple transactions over a period of time should not be aggregated to determine the drug weight for a substantive drug trafficking offense. [Petitioner] and his codefendants failed to raise the issue at trial, thus plain error applied. But, the circuit found that [Petitioner] and codefendants suffered no prejudice because there was sufficient evidence of their guilt, and the enhanced sentence was totally concurrent with the other sentences imposed.

> With respect to drug weight on the conspiracy counts, the Third Circuit explained a two-step process. The two-step process addresses the drug weight that is attributable for statutory maximum purposes under Apprendi . . . and the drug weight attributable for mandatory minimum purposes under Alleyne. To resolve the question of the statutory maximum, a jury must find the "quantity attributable to the conspiracy as a whole." To resolve what mandatory minimum applies to an individual defendant, a jury must be instructed to "attribute to a defendant only those quantities involved in violations of § 841(a) that were within the scope of, or in furtherance of, the conspiracy and were reasonably foreseeable to the defendant as a consequence of the unlawful agreement." In this case, the instruction given by the court corresponded with what a jury must decide to determine the statutory maximum punishment. In other words there was no error when the jury decided that the drug weight attributable to the conspiracy was properly instructed and

supported by the evidence. However, for the mandatory minimum, the jury instruction was insufficient because it failed to ask the jury to determine how much drug weight [Petitioner] was responsible for.

Since the matter was not preserved at the trial court, the circuit considered the issue for plain error review. In so doing, the circuit considered whether there was a reasonable probability of a different result for the defendant. The Third Circuit held that there was not. Since the sentence imposed for [Petitioner] (and other defendants) was above the mandatory minimum, the error did not affect his substantial rights and thus he was not eligible for relief.

The same analysis applies here. The statutory maximum for Count 1 (RICO Conspiracy) and Count 2 (Drug Trafficking Conspiracy) were properly found by the jury in accordance with Apprendi. The jury was properly instructed to consider all of the drugs attributable to the conspiracy as a whole.

With respect to the Alleyne / mandatory minimum error, [Petitioner] received a life sentence which is well above the 10-year mandatory minimum applicable, thus he suffered no prejudice from the jury instruction. Finally, with respect to the Rowe error, his sentence at Count 3 was totally concurrent with his sentences at Counts 1 and 2, and therefore he suffered no prejudice. [Petitioner]'s claim should be dismissed for failure to establish prejudice.

(Doc. No. 1814 at 10–14) (citations and footnotes omitted).

In his reply brief, Petitioner asserts that "[t]he jury did not return a special verdict indicating the specific amount of the controlled substance for which [he] was either personally responsible or that was reasonably foreseeable to him," in contravention of Alleyne and Rowe. (Doc. No. 1829 at 6) (citing United States v. Miller, 645 F. App'x 211, 218 (3d Cir. 2016) (unpublished) (finding harmless Alleyne error where the jury, while instructed to find a weight or quantity of cocaine involved in the conspiracy, "did not determine an exact amount of cocaine and cocaine base directly attributable to [the defendant] himself")). Petitioner then argues:

Because the evidence at trial was insufficient to establish that [Petitioner] conspired with others in violation of 21 U.S.C. § 846, but even if there was enough evidence that he was involved in the conspiracy, there was not enough evidence as to specific amounts attributable to him under 21 U.S.C. § 841(b)(1)(A), as neither specific amount were presented to the jury in relation to [Petitioner] in the relevant count nor was any drug distribution acts completed that involved [Petitioner].

(Id.)

Petitioner asserts that "[t]he statutory maximum for Count 1 (RICO Conspiracy) and Count 2 (Drug Trafficking Conspiracy) were not properly found by the jury in accordance with Apprendi" and that, "[w]ith respect to the Alleyne/mandatory minimum error, [he] received a life sentence which was not supported by the jury's verdict."  (Id. at 6–11.)  Petitioner's supplemental reply brief similarly argues that Petitioner's Sixth Amendment rights were violated when Petitioner's statutory range for sentencing was increased without a jury finding of drug amount attributable to him beyond a reasonable doubt as to Counts 1, 2, and 3.  (Doc. No. 1894-1 at 3–5.)  Because his Trial Counsel failed to make an Alleyne-based objection, Petitioner argues that counsel's conduct in failing to make the argument fell below an objective standard of reasonableness.  (Id. at 5–6 .)  Thus, Petitioner claims that he was prejudiced by Trial Counsel's failure to make the argument and object.  (Id. at 7–8.)

Having considered Petitioner's arguments and the record of these proceedings, the Court agrees with the Government that, even assuming Trial Counsel performed unreasonably under the first Strickland prong by failing to raise objections regarding the calculation of drug weight and statutory minimum and maximum terms of imprisonment, Petitioner has failed to establish prejudice under the second Strickland prong.  While Petitioner's arguments are at times unclear and differ between his brief in support and his reply brief, construing his briefing liberally, the Court discerns three overarching, interrelated arguments—none of which is availing.

First, Petitioner argues that an Apprendi violation occurred at trial and that Trial Counsel was ineffective for failing to raise it.  Under Apprendi, "[a] criminal defendant is entitled to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'"  See Williams, 974 F.3d at 345 n.11 (second alteration in original)

(quoting Apprendi, 530 U.S. at 477). The Apprendi error claimed here—i.e., that the jury was improperly permitted to determine drug weight by considering the quantity of drugs involved in the conspiracy as a whole—is not an error under the law. As the Third Circuit explained on direct appeal, in the context of 21 U.S.C. § 846 drug charges, where "drug quantities are charged pursuant to [21 U.S.C.] § 841(b)(1)(c)," the "statutory maximum term of imprisonment is to be determined according to the amount of drugs involved in the conspiracy as a whole." See Williams, 974 F.3d at 345. Because no Apprendi error occurred, Petitioner cannot establish that Trial Counsel's failure to raise an Apprendi objection resulted in any prejudice.

Next, Petitioner argues that Trial Counsel was ineffective for failing to object to the Alleyne error that occurred at trial regarding Count 2. "Under Alleyne, the jury must determine th[e] [aggregate drug] quantity to set the mandatory minimum [in the §§ 841(b)(1)/846 context]." Williams, 974 F.3d at 366. The Third Circuit found an Alleyne error here because "[t]he jury rendered its verdicts by considering only the amount of drugs involved in the conspiracy as a whole," rather than by considering "the violations of § 841(a) within the scope of the conspiracy, or in furtherance of it, that were reasonably foreseeable to the defendant as a natural result of his unlawful agreement." See id. at 366–67. The Third Circuit, however, reviewing for plain error, found no "reasonable probability that, but for the [Alleyne] error," the terms of imprisonment of the Defendants who raised the Alleyne error on appeal "would have been different." See id. at 367 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004)). The Third Circuit reached this conclusion given that, with one exception, those Defendants' "sentences include[d] incarceration in excess of § 841(b)(1)(A)'s mandatory minimum." See id. The same is true of Petitioner: he was sentenced far above the mandatory minimum—to life imprisonment—and for that reason cannot establish that the Alleyne error caused him Strickland prejudice, i.e., a

reasonable probability that, but for Trial Counsel's failure to raise the <u>Alleyne</u> error at trial, the result of Petitioner's criminal proceedings would have been different.

Third, Petitioner argues that Trial Counsel was ineffective for failing to object to the <u>Rowe</u> error at trial regarding Count 3. Under <u>Rowe</u>, multiple transactions over a period of time should not be aggregated to determine the drug weight for a substantive drug trafficking offense. <u>See</u> <u>Williams</u>, 974 F.3d at 365 (relying on <u>United States v. Rowe</u>, 919 F.3d 752, 759–60 (2019)). In the context of drug-trafficking conspiracy charges brought pursuant to 21 U.S.C. § 846 where "drug quantities are charged pursuant to [21 U.S.C.] § 841(b)(1)(c)," the "statutory maximum term of imprisonment is to be determined according to the amount of drugs involved in the conspiracy as a whole," whereas the mandatory minimum term is "determined only according to the aggregate quantity of drugs involved in those violations of § 841(a) that were within the scope of the conspiracy, or in furtherance of it, and were reasonably foreseeable to the defendant as a natural consequence of his unlawful agreement." <u>See</u> <u>Williams</u>, 974 F.3d at 372. Petitioner argues that he suffered prejudice as a result of the error. Because Petitioner's Trial Counsel failed to raise this issue at trial, plain error review applied to the issue on appeal. The Third Circuit concluded that "[t]here was sufficient evidence upon which a rational juror could have concluded that these six Defendants [including Petitioner] were guilty under § 846 and were responsible for 280 grams or more of crack" and because of that conclusion, "the <u>Rowe</u> error on Count [3] did not affect their substantial rights" because "[t]heir statutory maximum terms of imprisonment would have been life even if the <u>Rowe</u> error had not occurred." <u>See id.</u> at 373–74. Petitioner has failed to establish that he suffered prejudice as a result the <u>Rowe</u> error or Trial

Counsel's failure to object to the error under the second prong of <u>Strickland</u>.[8]   Accordingly, the

Court will deny Petitioner's motion as to Ground Two.

### C.    Ground Three: Sufficiency of Evidence of a Racketeering Enterprise

In Ground Three of his § 2255 motion, Petitioner argues that there was insufficient

---

[8]  In his initial brief, Petitioner refers to the "ineffective assistance during the court proceedings themselves." (Doc. No. 1757 at 10.)  Petitioner, in his supplemental reply brief, asks the Court to "liberally construe [this] as an argument that this [T]rial [C]ounsel was ineffective in failing to object to the Court's sua sponte order that the public was excluded from voir dire." (Doc. No. 1894 at 9.)  For reasons similarly described above, Petitioner claims that his Trial Counsel's failure to object was unreasonable and prejudiced him.  (<u>Id.</u> at 10.)  As to this newly raised argument, the Court concludes that Petitioner has failed to satisfy the second <u>Strickland</u> prong and, for that reason alone, cannot prevail on this claim.  <u>See</u> <u>Gaines v. Superintendent Benner Twp. SCI</u>, 33 F.4th 705, 712 (3d Cir. 2022) (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [<u>Strickland</u> prongs], then [courts] do not need to examine the other").  Before addressing prejudice, the Court notes as an initial matter its agreement with the Government that the alleged structural error in this case, "closing voir dire," would not give rise to a presumption of prejudice.  <u>See</u> <u>Weaver v. Massachusetts</u>, 582 U.S. 286, 294 (2017); <u>see also</u> <u>Barney v. Adm'r of N.J. State Prisons</u>, 48 F.4th 162, 165 (3d Cir. 2022) (noting that although erroneously closing a courtroom to the public is a "structural error" that may give warrant a presumption of prejudice, "[o]n habeas, not all structural errors require automatic reversal"); <u>Baxter v. Superintendent Coal Twp. SCI</u>, 998 F.3d 542, 548 (3d Cir. 2021) (stating that closing voir dire "is not akin to closing the part of trial where the evidence is being adduced" and thus prejudice is not presumed).  In any event, the Court discerns no basis upon which to reasonably conclude that Petitioner suffered actual prejudice due to Trial Counsel's failure to object.  Although "[i]t is . . . possible that potential jurors might have behaved differently if [the public] had been present"—and also possible that "the presence of the public might have had some bearing on juror reaction"—Petitioner "offer[s] no evidence or legal argument establishing prejudice in the sense of a reasonable probability of a different outcome but for counsel's failure to object."  <u>See</u> <u>Weaver</u>, 582 U.S. at 303 (internal quotation marks omitted).  As the Third Circuit stated in rejecting Petitioner's courtroom-closure claim, "although the closure encompassed all of the jury-selection phase, those proceedings lasted only two days; the public had access to all other phases of the trial, which in total lasted longer than seven weeks."  <u>See</u> <u>Williams</u>, 974 F.3d at 346.  "In addition, although the general public was not, absent authorization, able to be present at jury selection, as in <u>Weaver</u>, 'there were many members of the venire who did not become jurors but who did observe the proceedings.'"  <u>Id.</u> at 347 (quoting <u>Weaver</u>, 582 U.S. at 304).  "There has been 'no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands.'"  <u>Id.</u> (quoting <u>Weaver</u>, 582 U.S. at 304).  On that basis, the Court will deny Petitioner's motion on this newly raised ground.

evidence at trial to establish a racketeering enterprise. Because he unsuccessfully raised this precise argument on direct appeal, "contend[ing] that the alleged [Southside] gang did not amount to an enterprise for purposes of RICO liability," the claim is not cognizable on collateral review. See Williams, 974 F.3d at 370; Travillion, 759 F.3d at 288; see also Thomas, 750 F. App'x at 124; Farina, 625 F.3d at 117 n.21; United States v. Miles, No. 17-cr-00241, 2020 WL 4206145, at *2 (M.D. Pa. July 22, 2020) (finding one such claim "not cognizable on habeas review because this challenge was raised and adjudicated on direct appeal"). The Third Circuit squarely rejected this argument when it held that "[a] rational juror could conclude" from the evidence adduced at trial that Petitioner—as well as the other six Codefendants who raised the same argument on appeal—"agreed to further an enterprise whose predominant common purpose was 'making money' through the sale of controlled substances, but which also occasionally embraced related ends, such as 'protecting its own members and criminal schemes.'" See Williams, 974 F.3d at 370. Thus, Petitioner's claim advanced in Ground Three of his § 2255 motion is not cognizable on collateral review and, moreover, lacks merit. The Court will therefore deny Petitioner's motion as to Ground Three.

## D. Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). If "the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court need not hold a hearing. See 28 U.S.C. § 2255(b). In determining whether a hearing must be held regarding claims of ineffective assistance of counsel, the Court must first "accept as true the nonfrivolous allegations in the petition" and then "determine whether, on the existing record, those claims that are nonfrivolous

conclusively fail to show ineffective assistance of counsel." See United States v. Dawson, 857 F.2d 923, 927–28 (3d Cir. 1988); see also United States v. Arrington, 13 F.4th 331, 334 (3d Cir. 2021) (applying the standard as set forth in Dawson). Here, assuming the truth of Petitioner's nonfrivolous allegations but not of the conclusory and speculative ones, the Court finds that he has conclusively failed to establish ineffective assistance of counsel as to any of his grounds for relief. Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

### E.    Certificate of Appealability

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Here, the Court concludes that jurists of reason would not find the disposition of this case debatable, and the Court will not issue a COA.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's motion for leave to amend Petitioner's § 2255 motion (Doc. No. 1859), grant Petitioner's motion for leave to file a supplemental reply brief (Doc. No. 1894), and deny Petitioner's § 2255 motion (Doc. No. 1756) without an evidentiary hearing and will not issue a COA. An appropriate Order follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania